

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

December 12, 1962

Honorable James A. Morris
District Attorney
Courthouse
Orange, Texas

Opinion No. WW-1492

Re: (1) Whether the value of
real estate occupied by a
National Bank under a lease-
purchase agreement pursuant
to which agreement the Bank
pays taxes thereon may be
deducted from the value of
the capital stock, surplus
and undivided profits in
determining the value of
the shares of stock of
said Bank when the value
of such real estate was
not taken into considera-
tion in arriving at the
actual cash value of the
shares. (2) Whether a
back-assessment may be
made against the share-
holders under submitted

Dear Mr. Morris:                    facts.

We quote the following excerpt from the statement
attached to your letter requesting the opinion of this office
on the above captioned matters:

"The County National Bank of Orange,
Texas was organized and began operations
during the year 1960. The real estate
and improvements occupied by the bank as
its banking house are owned in fee by
Mr. E. W. Brown, Jr., who has leased the
property to County National Bank by the
attached lease-purchase agreement. In
addition to a stipulated monthly rental,
the bank is obligated to pay certain
insurance premiums, as well as all taxes
upon the property involved. The land
and improvements were rendered by the
bank for the year 1961 and 1962 and the
1961 taxes were paid by the bank. The
bank has also furnished the Tax Assessor-
Collector of Orange Independent School
District with a list showing its capital,

surplus and undivided profits and a list
of the names and addresses of its share-
holders and the number of shares owned by
each. In determining the value of the per-
sonal property to be assessed to the share-
holders, the bank has subtracted from its
capital structure the value of the real
estate upon which it paid the taxes. The
bank's published statement of condition
does not list any real estate among its
resources.

"Our first question is:

"Where a National Bank occupies real
property under such a lease-purchase
agreement and pays the taxes thereon in
compliance with the lease, should the
value of the real estate /_which was
not taken into consideration in arriving
at the actual cash value of the shares_/
be deducted from the value of the capi-
tal stock, surplus and undivided profits
in determining the value of personal
property to be assessed to the share-
holders?"

The lease-purchase agreement is for a term of five years.
The lessor agreed to construct the bank building and improve-
ments according to certain plans and specifications. At any
time prior to the expiration of the original term of the lease,
the lessee has an option to renew the lease for a further term
of five years upon the original expiration date of the agree-
ment with a further option to renew the lease for a third five-
year period. Lessee has the right and option to purchase the
leased premises during the various terms of the lease.

Article 7166, Vernon's Civil Statutes, reads, in part,
as follows:

"Every banking corporation, State or
national doing business in this State
shall, in the city or town in which it
is located, render its real estate to
the tax assessor at the time and in the
manner required of individuals. At the
time of making such rendition the presi-
dent or some other officer of said bank
shall file with said assessor a sworn
statement showing the number and amount
of the shares of said bank, the name and

> residence of each shareholder, and the
> number and amount of shares owned by
> him.  Every shareholder of said bank
> shall, in the city or town where said
> bank is located, render at their actual
> value to the tax assessor all shares
> owned by him in such bank; and in case
> of his failure so to do, the assessor
> shall assess such unrendered shares as
> other unrendered property.  Each share
> in such bank shall be taxed only for
> the difference between its actual cash
> value and the proportionate amount per
> share at which its real estate is as-
> sessed.  The taxes due upon the shares
> of banking corporations shall be a lien
> thereon, and no banking corporation shall
> pay any dividend to any shareholder who
> is in default in the payment of taxes
> due on his shares; nor shall any banking
> corporation permit the transfer upon its
> books of any share, the owner of which
> is in default in the payment of his
> taxes upon the same.  . . ."

We call your attention to the fact that the value of shares of bank stock for ad valorem tax purposes should be based upon the actual cash value of the stock, less the value of the proportionate amount per share of the real estate owned by the bank.  Attorney General's Opinion No. WW-1208 pointed out that depending upon the facts of each case, the actual cash value of the shares might or might not be obtained by adding the value of the capital stock, the amount of surplus, undivided profits or reserve funds.  As stated in Rosenburg v. Weekes, 67 Tex. 578, 4 S.W. 899, "The value of a bank share depends upon the value of its franchise, capital, and property of all kinds, less the amount of its debts."  We assume that the method which has been followed in this case does, in fact, arrive at the actual cash value of the stock.  However, it is noted that the value of the leasehold interest in the real estate, if any, was not taken into consideration in arriving at the actual cash value of the shares.

We think that the provisions of Article 7166 are clear and unambiguous, and each share in a bank shall be taxed only for the difference between its actual cash value and the proportionate amount per share at which real estate actually owned by the bank is assessed.  It has been held that the effect of Article 7165, V.C.S. and Article 7166, V.C.S., is to require the banking corporation to pay taxes on all of its real estate and the shareholders to pay the taxes on the personal

property.  Engelgeke v. Schlenker, 12 S.W. 999 (1890); City of Marshall v. State Bank of Marshall, 127 S.W. 1083 (Civ.App. 1910, error ref.).  Implicit in the holdings of these cases, is the requirement of actual ownership by the banking corporation.

Attorney General's Opinion No. O-1214 held that the legislative purpose in permitting the deduction of the assessed valuation of real estate owned by the bank in arriving at the value of the shares was to prevent double taxation of the real estate owned by the bank.  In the instant case, the taxes paid by the bank amount to nothing more than a part of the consideration paid for the lease.  Thus refusing to allow deduction for the assessed valuation of the real estate in this case in valuing the shares of stock does not result in double taxation since the real estate is not taxed again through the shareholders as a part of the assets of the bank, as the value of the real estate, if any, was not taken into consideration in arriving at the actual value of the shares.

We quote again from the statement attached to your request:

> "Our second question results from the failure of the school district to make any assessment against the shareholders for the year 1961.  Along with its real estate rendition, the bank furnished a statement of its capital, surplus and undivided profits, a copy of which is attached, as well as a list of its shareholders and the number of shares owned by each.  Since the omission was discovered within two years, we infer that it is proper to make a back-assessment for the year 1961 against the shareholders at the value determined to be correct by your answer to the first question.  The bank contends that the unsigned list showing capital, surplus and undivided profits, together with the list of shareholders, constituted a rendition of the personal property on behalf of the shareholders and further contends that such property cannot now be back-assessed.
>
> "Our second question is:
>
> "Should the school tax assessor-collector make a back-assessment for

the year 1961 against the shareholders
in the manner provided in Article 7208?"

The provisions of Article 7208, V.C.S., read as follows:

"If the assessor of taxes shall dis-
cover in his county any property, or
outside of his county but belonging to
a resident of the county, any personal
property which has not been assessed or
rendered for taxation every year for
two years past, he shall list and assess
the same for each year thus omitted
which it has belonged to said resident,
in the manner prescribed for assessing
other property; and such assessment
shall be as valid and binding as though
it had been rendered by the owner there-
of."

In Republic Ins. Co. v. Highland Park Independent School
District, 141 Tex. 224, 171 S.W.2d 342 (1943), the court held
that Article 7208 has no application to school district asses-
sors, but only to county assessors in assessing taxes due the
state and county. In that case the attempted back-assessment
involved taxes more than two years past due. We quote the
following excerpt from page 348 of the court's opinion:

". . .We have said that Art. 2791,
supra, gives the assessor and col-
lector of an independent school dis-
trict the same powers and duties with
respect to assessing and collecting
taxes as are vested in the tax officials
of towns and villages. The very next
article (2792, R.S. 1925) authorizes
the school districts to have their taxes
assessed and collected by the county
assessor and collector, or collected
only by the county collector, and the
only limitation placed upon the county
official, when he thus becomes ex offi-
cio assessor and collector for the
school district, is that he cannot as-
sess the taxable property in the dis-
trict at a greater value than that as-
sessed for county and state purposes.
We think it is clear that if the legis-
lature had meant that his powers and
duties should otherwise be different
from those given a duly constituted

school district assessor and collector under Art. 2791, the limitation would appear in Art. 2792. Therefore, the county assessor and collector, in discharging his duty to assess and collect for respondent during the years in question, was governed by Art. 1047 and not by Art. 7208; in so far as his power to 'back' assess for school taxes was concerned. And, as we have said, if he suffered taxable personal property to be omitted from the rolls during those years, his action was in no wise binding on the school district and did not affect the right and duty of some successor in office to 'back' assess it, under Art. 1047."

Article 1047, V.C.S., reads as follows:

"Whenever the assessor and collector shall ascertain that any taxable property, real or personal, has not been assessed for any previous year, he shall assess the same in a supplement to his next assessment roll, at the same rate under which such property should have been assessed for such year, stating the year for which such property should have been assessed; and the taxes thereon shall be collected in the same manner as other assessments. In any case where any party has omitted to render property for taxation for any former year or years, and such taxes have not been paid, such party shall give such property in for assessment for the years thus omitted and pay such taxes; and the assessor and collector shall enter all such property in a supplement to his next assessment roll, under the head of payments for former years."

Under the plain terms of the above quoted statute the Tax Assessor-Collector of the Orange Independent School District has a clear duty to make the back-assessments for the year 1961 against the shareholders and should proceed according to the provisions of the statute.

## S U M M A R Y

The value of real estate occupied by a National Bank under a lease-purchase agreement pursuant to which agreement the Bank pays taxes thereon may not be deducted from the value of the capital stock, surplus and undivided profits in determining the value of the shares of stock of said Bank, as the value if any, of the real property was not taken into consideration in arriving at the actual cash value of the shares. Under the submitted facts, a back-assessment may be made against the shareholders pursuant to the provisions of Article 1047, V.C.S.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: Marietta McGregor Payne
Marietta McGregor Payne
Assistant Attorney General

MMP/jp

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman

Charles Lind
Frank Booth
W. E. Allen
Vernon Teofan

REVIEWED FOR THE ATTORNEY GENERAL
By: Leonard Passmore